**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JAHNIKA T. SMITH,

        Plaintiff,

v.

FLORIDA DEPARTMENT OF CORRECTIONS, an agency of the State of Florida, the SOUTH FLORIDA RECEPTION CENTER, an entity of the State of Florida, FRANCISCO J. ACOSTA (Individually, and in his official capacity as Warden of South Florida Reception Center), NATHAN A. POLLOCK (Individually, and in his official capacity as Colonel Correctional Officer at South Florida Reception Center), QUIANA S. PALACIOS (Individually, and in her official capacity as a Training Correctional Officer at South Florida Reception Center), and ANGEL K. GHOLSTON (Individually, and in her official capacity as Captain at South Florida Reception Center),

        Defendants.

Case No. _____
**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

Plaintiff Jahnika Smith ("**Plaintiff**" or "**Ms. Smith**"), by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant Florida Department of Corrections ("**Defendant FDC**"), Defendant South Florida Reception Center ("**Defendant SFRC**"), Defendant Francisco J. Acosta ("**Defendant Acosta**"), Defendant Nathan A. Pollock ("**Defendant Pollock**"), Defendant Quiana S. Palacios ("**Defendant Palacios)** and Defendant Angel K. Gholston ("**Defendant Gholston**"), (collectively referred to as "**Defendants**"), and alleges as follows:

1

## INTRODUCTION

1.      This case is about a pregnant 19-year-old correctional officer whose state employer subjected her to an unrelenting hostile work environment before orchestrating a scheme to induce her to resign because of her pregnancy.

2.      Plaintiff Jahnika Smith brings this action pursuant 42 U.S.C. § 1983 ("**§ 1983**") to redress the deprivation of her rights, privileges and immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Plaintiff also brings this action pursuant to the Florida Civil Rights Act of 1992, §760.01, *et seq.*, Florida Statutes ("**FCRA**"), to redress Defendant FDC and Defendant SFRC's unlawful employment practices.

3.      Plaintiff seeks monetary relief to redress Defendant FDC and Defendant SFRC's unlawful employment practices in violation of the FCRA for discriminating against Plaintiff because of her sex and pregnancy.  Plaintiff seeks punitive damages against Defendant Acosta, Defendant Pollock, Defendant Palacios, and Defendant Gholston for intentionally, directly, and willfully depriving Plaintiff of her constitutional and civil rights motivated by evil intent and/or reckless or callous indifference to her federal rights.

4.      At bottom, Defendants are liable for depriving Plaintiff of her personal dignity and her civil and constitutional rights to pursue an equal employment opportunity in an environment free of relentless discrimination.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights), and §1367 (supplemental jurisdiction).

6.     Venue is proper in the Southern District of Florida Miami Division under 28 U.S.C. § 1391(b) because the acts or omissions giving rise to this action occurred in the Southern District of Florida's jurisdiction.

## PARTIES

7.     Plaintiff Jahnika Smith is an individual woman residing in the State of Florida.

8.     Plaintiff has an implied right of action to bring this suit pursuant to 42 U.S.C. § 1983, and an express right of action pursuant to FCRA § 760.11(1).

9.     Defendant Florida Department of Corrections is a governmental entity and political subdivision of the State of Florida, established pursuant to the laws of Florida.

10.     Defendant FDC is one of the largest state prison systems in the United States.

11.     Defendant FDC is a "person" within the meaning of 42 U.S.C. § 1983.

12.     Defendant South Florida Reception Center is a governmental body established pursuant to the laws of Florida and is located within this judicial district.

13.     Defendant SFRC is a "person" within the meaning of 42 U.S.C. § 1983, and a "person" within the meaning of FCRA § 760.02(6), and an "employer" within the meaning of FCRA § 760.02(7).

14.     At all material times, Plaintiff was jointly employed by the Florida Department of Corrections and the South Florida Reception Center.

15.     Defendant Quiana S. Palacios ("**Ms. Palacios**") is an individual woman residing in the State of Florida.  Ms. Palacios, an FDC employee, and a "person" within the meaning of § 1983, worked as a "Correctional Officer Training Officer" at the South Florida Reception Center. Ms. Palacios held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.  Ms. Palacios insisted on referring to Ms. Smith as "the

pregnant one."  Indeed, Ms. Palacios humiliated Ms. Smith in front of her co-officer trainees, and in a room full of Majors, repeatedly referring to Ms. Smith as "the pregnant one."  Ms. Smith stood up for herself and said, "My name is Officer Smith."  Defendant Palacios said, "All I know is, she's the pregnant one."

16.     Defendant Angel K. Gholston ("**Ms. Gholston**") is an individual woman residing in the State of Florida.  Ms. Gholston, an FDC employee, and a person within the meaning of § 1983, worked as a Captain correctional officer at the South Florida Reception Center.  Ms. Gholston held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.  Ms. Gholston would not allow Plaintiff to take her pregnancy medication.  Ms. Gholston deliberately disregarded Plaintiff's accommodations and held her hours longer than Plaintiff's doctor allowed.  Consequently, Plaintiff rushed to an urgent care and was subsequently placed on 4 days of mandatory bedrest.  Further, Ms. Gholston assigned Plaintiff to work in the most dangerous ward of the Detention Center.  Ms. Gholston told Plaintiff to resign, and said, "But don't write because of pregnancy complications."

17.     Defendant Nathan A. Pollock ("**Mr. Pollock**") is an individual man residing in the State of Florida.  Mr. Pollock, an FDC employee, and a "person" with the meaning of § 1983, worked as a "Correctional Officer Colonel" at the South Florida Reception Center.  Mr. Pollock held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.  Mr. Pollock gave Ms. Smith "five minutes" to resign or else he would fire her because she was "missing too many days," and her "doctor's notes didn't cover her."  Mr. Pollock said, "And if you get fired, you won't even get hired at Checkers."

18.     Defendant Francisco J. Acosta ("**Mr. Acosta**") is an individual man residing in the State of Florida.  Mr. Acosta, an FDC employee, final policymaker, and a "person" within the

meaning of § 1983, works as the "Warden" of the South Florida Reception Center.  Mr. Acosta held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.  Mr. Acosta was personally involved in inducing Plaintiff to resign because of her pregnancy.  Mr. Acosta authorized Defendant Pollock to terminate Plaintiff because she was missing days due to complications arising from her pregnancy.

## ADMINISTRATIVE PREREQUISITES

19.     Plaintiff has complied with all administrative prerequisites.

20.     On or about December 6, 2019, Plaintiff filed an inquiry with the EEOC concerning pregnancy discrimination because of sex.

21.     On or about January 8, 2020, Plaintiff timely dual-filed a charge of discrimination (Charge No. 510-2020-01446) with the U.S. Equal Employment Opportunity Commission ("**EEOC**") and the Florida commission on Human Relations ("**FCHR**"), naming the South Florida Reception Center as Respondent.

22.     On or about September 2, 2020, the EEOC issued Plaintiff her notice of right to sue.

23.     180 days have elapsed since Plaintiff filed her charge, and the FCHR has failed to make a determination of cause.

24.     Pursuant to FCRA § 760.11(5), Plaintiff is timely commencing this action within 1 year of the EEOC's notice of Plaintiff's right to sue notice.

## FACTUAL ALLEGATIONS

25.     Plaintiff Jahnika Smith is a 21-year-old black woman.

26.     On or about August 6, 2019, Ms. Smith began working for Defendant FDC as a "Non-Certified Trainee Officer" at the South Florida Reception Center.  Ms. Smith was one of about two dozen trainee officers in the FDC's twelve-week training program.

27.     Ms. Smith was 19 years old and in the second trimester of her pregnancy at the time.  Plaintiff had been experiencing extreme complications.  Indeed, Plaintiff had to wear motion sickness wristbands to help her gain weight.

**Plaintiff Notifies Defendants of Her Pregnancy and Defendant Palacios Insists on Referring to Plaintiff as "The Pregnant One"**

28.     Nonetheless, on or about August 6, 2019, during orientation, Ms. Smith notified Human Resources and Ms. Palacios that she was pregnant.  Ms. Smith explained her complications to Ms. Palacios.  Plaintiff said she had been losing too much weight.  She said, "Every time I eat, I throw up."  Ms. Smith also stated that concealing her pregnancy from her co-workers was in the best interest of her safety.

29.     Ms. Palacios told Ms. Smith to bring a doctor's note and a list of the medications Ms. Smith was taking because of her pregnancy.

30.     On or about August 9, 2019, Plaintiff provided Ms. Palacios and Human Resources with her required paperwork documenting her pregnancy and her various complications.

31.     In or around August of 2019, Ms. Palacios humiliated Ms. Smith in a room full of trainee correctional officers.  At the time, Ms. Palacios was speaking over the phone to Sergeant T. Blow ("**Ms. Blow**"), the Detention Center's "Recruiter."

32.     Ms. Palacios, in a room full of trainee officers, referred to Plaintiff as "the pregnant one," causing the trainee officers to erupt with laughter.  Meanwhile, Ms. Smith was humiliated, offended, and extremely embarrassed.

33.     However, Ms. Smith stood up for herself.  She said, "*My name* is Officer Smith."

34.     Then Ms. Palacios said, "I don't know what your name is—all I know is you're 'the pregnant one.'"

35.     Ms. Blow, on speakerphone, said, "She just told you her name is 'Officer Smith.'"

36.     Shortly thereafter, Ms. Smith approached the Detention Center Majors about Ms. Palacios' treatment.  Ms. Blow was also in attendance.  Plaintiff began crying.  She explained that she had told Ms. Palacios she wanted to keep her pregnancy private for her own safety.

37.     Ms. Blow stood up for Plaintiff, an explained that she had also told Ms. Palacios to refer to her by her name, and not "the pregnant one."

38.     Still, the Detention Center took no further action to discipline or even investigate Ms. Palacios' discriminatory behavior.

### Defendant Gholston Refuses to Accommodate Plaintiff's Shift, Assigns Her to The Most Dangerous Ward, and Refuses to Allow Plaintiff to Take Her Pregnancy Medication

39.     Defendants repeatedly and willfully failed to accommodate Ms. Smith's pregnancy.

40.     On or about September 9, 2021, Ms. Smith told Ms. Weatherspoon that she was taking medication every 4-6 hours to help mitigate Plaintiff's excessive vomiting and nausea. Importantly, the medication allowed Ms. Smith to eat without throwing up.  Ms. Smith explained that the medication makes her drowsy, and that she tends to have delirium towards the end of the day.  Ms. Smith explained that the side effects are drowsiness and delirium.

41.     Shortly thereafter, Ms. Gholston assigned Ms. Smith to "Compound II," the most dangerous ward of the prison.  Indeed, Compound II is so dangerous that FDC and SFRC policy require that two officers and one sergeant are supposed to supervise the inmates.  Ms. Gholston defied that policy and intentionally assigned Ms. Smith to Compound II without a back-up officer. Still, Ms. Smith remained strong and showed that she was committed to a career of public service.

42.     In or around mid-October of 2019, Ms. Smith's complications from her pregnancy became increasingly difficult.  Plaintiff could not hold a meal down.  Every time she ate, she threw up.  Consequently, she began losing weight, and her baby's life was at risk.

43.     On or about October 26, 2019, Ms. Gholston refused to allow Plaintiff to leave work to take her medication.  At around 2 P.M., at the end of Plaintiff's accommodated shift—after working since 6 A.M.—Ms. Gholston required Ms. Smith to remain at work until 7:30 P.M. five and a half hours beyond the physical limitations provided by her doctor.  Ms. Smith was writhing in pain. "Please," Ms. Smith said, "I'm nauseous and I've been throwing up like crazy." Ms. Gholston was defiant.  "No," she said.  "If you leave to take your meds, I'll write you up for abandoning your post."

44.     Consequently, at around 8 P.M., Ms. Smith rushed to the closest urgent care. Medical professionals attended to Ms. Smith, and subsequently ordered Plaintiff to 4 days of mandatory bed rest.  A doctor at Baptist Health Medical Plaza's Doral Urgent Care Center wrote, "Please excuse [Ms. Smith] from work due to illness for 4 days from [October 26, 2019]."

**Defendant Gholston Tells Plaintiff Not to Return Until Shift Restriction is Lifted**

45.     On or about October 30, 2019, Ms. Smith's OB-GYN, Alex Birman, M.D. ("**Dr. Birman**") provided Ms. Smith with an accommodation to work no more than 8 hours per day, and 40 hours per week.

46.     Dr. Birman was furious when Ms. Smith complained that Defendants forced Plaintiff to work from 6 A.M. to 7:30 P.M.  Dr. Birman's medical advice was blunt: if Defendants continued to deliberately disregard Plaintiff's accommodations, she had to quit because Defendants were putting Ms. Smith and her baby's life in grave danger.

47.     Dr. Birman notated that Ms. Smith's 13-hour shifts were adversely affecting her pregnancy complications.  Additionally, Plaintiff's lack of sleep, missing medication doses, and long hours, were exacerbating her exhaustion, which was already affected by the side effects of her medication. To be sure, driving home at 8 P.M. after working thirteen hours was extremely dangerous because Ms. Smith would doze off from drowsiness.

48.     On or about October 31, 2019, Ms. Gholston told Ms. Smith she could not return to work until Plaintiff's doctor lifted Ms. Smith's 8-hour accommodation.  Dr. Birman was furious at the decision-making of the Detention Center and its defiance of Dr. Birman's accommodation orders.  Defendants failed to accommodate Ms. Smith, again—repeatedly.

49.     On or about November 1, 2019, Dr. Birman provided a letter lifting Ms. Smith's work hours.  However, Dr. Birman implored the Detention Center that "strong consideration should be given to safer duties for a pregnant patient."

50.     However, in or around late November of 2019, Ms. Smith began experiencing complications once again.  On or about November 29, 2019, Plaintiff went to the Urgent Care because she felt weak, could not get out of bed, and could not even eat.  Consequently, medical doctors placed Ms. Smith on an additional 4-day bedrest.  The Urgent Care center provided the Detention Center with information that Ms. Smith must not work from November 29, 2019 to December 2, 2019, and tentatively recommended Ms. Smith could return to worn on December 3, 2019.

51.     On or about December 1, 2019, Ms. Smith turned 20-years-old.

52.     On or about December 3, 2019, the Urgent Care center cleared Ms. Smith to return to work.

53.     On or about December 4, 2019, Dr. Birman ordered Ms. Smith to go to the hospital due to resurfacing complications.

54.     On or about December 5, 2019, Dr. Birman instructed Ms. Smith to stay home.  He provided a note for Plaintiff stating that Ms. Smith was evaluated in the emergency room due to a pregnancy-related issue the day before, on or about December 4, 2019.

55.     On or about December 6, 2019, Dr. Birman wrote an accommodation that Ms. Smith was "advised not to go to work on [December 5, 2019] and to be on bed rest at home."  Dr. Birman indicated that Ms. Smith could "return to work without any restrictions or limitations on December 6, 2019.

**Defendants Orchestrate a Scheme to Induce Plaintiff to Resign Because of Her Pregnancy**

56.     On or about December 6, 2019, Defendants orchestrated a scheme to force Ms. Smith's resignation under the guise of a lawful termination.

57.     Plaintiff entered a room with Mr. Pollock.  Ms. Smith handed the documentation from Dr. Birman and Urgent Care indicating that Plaintiff had been missing days for her various hospitalizations, urgent care visits, doctor's appointments, and mandatory bed rest.

58.     Ms. Smith walked into the academy room, where Mr. Pollock and Ms. Weatherspoon were waiting for her.  Immediately, Mr. Pollock looked at Plaintiff and said, "You can step out."

59.     When Ms. Smith left, a superior officer told Plaintiff to go sit in a small room. Moments later the officer entered and said, "Your nails are out of compliance, I'm writing you up."

60.     Moments later, Mr. Pollock and Ms. Gholston entered.  Mr. Pollock looked at Plaintiff's records and said, "You're always absent—your attendance is horrible."  He said, "Either

resign or I'm gonna put in papers to get you fired." Ms. Smith could not believe what was happening.

61.   "And you if you get fired," Mr. Pollock said, laughing, "you won't even get hired at Checkers."

62.   Ms. Smith said, "But my doctors said I had to rest—I was in the hospital!"

63.   Mr. Palacios said, "These doctor notes don't cover you—you've been absent too long."

64.   To be sure, Plaintiff was only absent because her doctors told her that her baby's life was in jeopardy. Indeed, Ms. Smith wanted nothing more to be at work every day. Ms. Smith said, "So, let me understand. I'm being forced to resign because of the complications of my pregnancy? You think I planned that?"

65.   Mr. Pollock said, "No one plans when they gonna get sick." Ms. Smith agreed with that. She said, "Then what's the point of all this? I have my documentation from my doctors."

66.   Mr. Pollock said, "Like I already told you, the notes don't cover you—I'm not gonna keep going back and forth with you—what's your decision?"

67.   Ms. Smith was flustered. She said, "I can't make a decision right now. I need some time to think. This is my future how I need to provide for my baby." A moment later, Plaintiff said, "Can I speak with someone else? I mean, this is not right."

68.   Mr. Pollock was defiant. He said, "This is what you have to do when you're an adult. You have five minutes to make a decision."

69.   Ms. Smith requested to speak with the Assistant Warden of the Detention Center— a woman at the time—because Plaintiff believed the Assistant Warden would be understanding of her predicament.

70.     However, Mr. Pollock refused.  Instead, Mr. Pollock said he would bring Warden Acosta to discuss Ms. Smith's resignation because of her pregnancy.

71.     When Mr. Acosta arrived, Mr. Pollock apprised the Warden of Plaintiff's pregnancy, and her numerous absences because of medical appointments.

72.     Ms. Smith handed Mr. Acosta her documentation from Dr. Birman and said, "Why am I being forced to resign?"

73.     Mr. Acosta looked up from the documents, and said, "You've missed too many days."

74.     Plaintiff explained the only reason she had missed a few days was because she was either in the hospital, at doctor's appoints, or on mandatory bed rest.

75.     Mr. Acosta echoed Mr. Pollock and said, "The notes don't cover you," and then exited.

76.     Mr. Pollock said, "So, what you gonna do?"  Ms. Smith could not resign.  She said, "I need more time, I can't decide right now."

77.     The officer who wrote Ms. Smith up for her nails, entered.  Mr. Pollock said, "Now what are we gonna do with her?"

78.     At that point, Mr. Pollock left and had a discussion with Ms. Gholston and the other officer.

79.     About five minutes later, Ms. Gholston walked in and said, "If I was you, I would just resign."  Ms. Gholston said, "If he fires you, you're gonna mess up your life."

80.     Ms. Gholston after all was the woman who refused to follow Ms. Smith's accommodations, assigned her to the most dangerous ward, and now she was here giving Plaintiff advise like she was doing her a favor.

81.     Ms. Gholston said, "Just write that you're resigning—*do not write pregnancy complications*."

82.     Ms. Smith wrote that that she was being forced to resign because of her pregnancy.

83.     Later that day, after Ms. Smith was dismissed from the Detention Center, one of her fellow correctional officers called and asked Ms. Smith, "Why did you quit?"

84.     Plaintiff explained, "I didn't quit—they forced me to resign.  They said the doctor's notes 'don't cover me.'"

85.     Soon thereafter one of Ms. Smith's fellow trainee officers called Ms. Smith and said that that Mr. Pollock, Ms. Gholston and Ms. Weatherspoon were all laughing about Plaintiff's resignation.  Ms. Weatherspoon read Ms. Smith's letter out loud in front of the other training officers in the Prison Academy.  "Look," Ms. Weatherspoon said, laughing "she even spelled pregnancy wrong!"

86.     Meanwhile, Ms. Smith was now weeks away from delivering a child, and had no job, or means to provide for her child because of Defendants deprived Ms. Smith of her employment.

87.     The above are just some of the examples Defendants subjected Plaintiff to on a repeated an ongoing basis.

88.     Defendants unlawfully discriminated against Plaintiff because of her sex and failed to accommodate her pregnancy.

89.     Plaintiff claims a continuous practice of discrimination and claims that Defendants are subjecting her to continuing violations and makes all claims herein under the continuing violations doctrine.

90.     Plaintiff claims aggravation, activation, and/or exacerbation of any preexisting conditions.

91.     As a result of Defendants' unlawful conduct, Plaintiff has suffered damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities with Defendant, and continues to suffer the same.

92.     Plaintiff seeks punitive damages, pursuant to §1988, against Defendant Pollock, Defendant Weatherspoon, Defendant Palacios, Defendant Acosta, and Defendant Gholston for willfully depriving Plaintiff of her Equal Protection rights motivated by evil intent and/or with reckless indifference to her federal rights.

93.     Plaintiff has also suffered emotional distress, mental anguish, loss of personal dignity, and other intangible damages.

94.     Plaintiff seeks punitive damages against Defendant SFRC and Defendant FDC for willfully violated Plaintiff's clearly established rights by depriving Plaintiff of her civil right to pursue an equal employment opportunity in an environment free of sex discrimination.

95.     At bottom, Defendants are liable for intentionally depriving Ms. Smith of her clearly established rights secured by Constitution and laws of the United States.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983
### Fourteenth Amendment Equal Protection Clause
### (Against Defendants Palacios, Gholston, Acosta, and Pollock)

96.     Plaintiff reincorporates the allegations in paragraphs 58-82.

97.     Section 1 of the Fourteenth Amendment prohibits states from depriving persons of "equal protections of the laws," including discrimination and harassment claims by public employees.

98.     Under the Equal Protection Clause, public employees have a constitutional right to be free from unlawful sex discrimination in public employment.

99.     Plaintiff had the constitutional right as a pregnant public employee to work in an environment free from unrelenting, intentional pregnancy discrimination.

100.    Defendants Palacios, Pollock, Acosta, and Gholson intentionally discriminated against Plaintiff because of her pregnancy.

101.    Defendants Palacios, Pollock, Acosta, and Gholston acted under color of law to deprive Plaintiff of her rights secured by the 14th Amendment Equal Protection Clause by intentionally discriminating against Plaintiff because of her sex.

102.    Defendants Palacios, possessing and wielding authority as a state law enforcement officer, intentionally deprived Plaintiff of her Fourteenth Amendment Equal Protection rights by incessantly referring her as the "pregnant one." Plaintiff said, "My name is Officer Smith." Defendant Palacios said, "I don't know what her name is—all I know is, you're the pregnant one."

103.    Defendant Gholston, possessing and wielding authority as a state law enforcement officer, intentionally deprived Plaintiff of her Fourteenth Amendment Equal Protection rights by intentionally discriminating against Plaintiff because of her pregnancy.  Indeed, Defendant Gholston deliberately disregarded Plaintiff's pregnancy accommodations, forced her to work hours longer than her accommodated hours, refused to allow her to take her pregnancy medication, and told her not to return until her doctor lifted her accommodation restrictions.

104.    Defendant Acosta possessing and wielding authority as a state law enforcement officer, intentionally deprived Plaintiff of her Fourteenth Amendment Equal Protection rights by directly participating in her termination.  Indeed, Defendant Acosta reviewed Plaintiff's medical absences, and told her, "You've missed a lot of days," and her "doctor's notes don't cover you."

105.    Defendant Pollock, possessing and wielding authority as a state law enforcement officer intentionally deprived Plaintiff of her Fourteenth Amendment Equal Protection rights by telling Plaintiff she had five minutes to decide between resigning or termination for missing days because of her pregnancy.  Defendant Pollock laughed and said, "If you resign, you won't even get hired at Checkers."

106.    Defendant Gholston, possessing and wielding authority as a state law enforcement officer, intentionally deprived Plaintiff of her Fourteenth Amendment Equal Protection rights by inducing Plaintiff to resign because of her pregnancy saying, "If I was you, I would just resign … *but don't write because of pregnancy complications*."

107.    The contours of Plaintiff's pregnancy rights are clearly established, and sufficiently clear, such that any reasonable state officer would know that forcing a pregnant employee to resign because of her pregnancy would violate Plaintiff's Fourteenth Amendment rights.

108.    The intentional deprivation of Plaintiff's Fourteenth Amendment rights by Defendants Palacios, Pollock, Acosta, and Gholston were motivated by evil intent, and/or reckless or callous indifference to Plaintiff's federally protected rights, and therefore warrant an award of punitive damages against the aforementioned Defendants.

109.    As a result of Defendant Pollock, Gholston and Acosta's intentional deprivation of Plaintiff's equal protection rights, Plaintiff has suffered damages.

**COUNT II**
**42 U.S.C. § 1983**
**Fourteenth Amendment Procedural Due Process**
**(Against Defendants Gholston, Acosta, and Pollock)**

110.    Plaintiff reincorporates the allegations contained in paragraphs 56-84.

111.    Section 1 of the Fourteenth Amendment prohibits states from depriving persons of life, liberty or property without due process of law.

112.    "Procedural due process" ensures that the state provides fundamentally fair process in connection with any deprivation of property.

113.    Plaintiff has a personal, recognizable, and protectable property interest in her public employment as a correctional officer.

114.    Plaintiff's property interest as a correctional officer is recognized by the state law of Florida.

115.    All persons are guaranteed sufficient process before losing a protected interest. Sufficient process arises when a party (1) receives notice of the possible loss of property and (2) a meaningful opportunity to be heard by a neutral decisionmaker in a meaningful manner.

116.    Courts apply a default rule that a person is entitled to process prior to any deprivation of property.  Still, courts may provide process after the deprivation if such process was all the state could provide.

117.    Plaintiff never received sufficient process *at any point* with respect to her interest in her public employment as a correctional officer.

118.    Indeed, Plaintiff received no notice of the possible loss of her job, and did not have a meaningful opportunity to be heard by a neutral decisionmaker.

119.    Instead, Plaintiff arrived at work on December 6, 2018 expecting to return after being on mandatory bedrest.  However, she was blindsided by the fact that she would have to resign because of her pregnancy—without process.

120.    Defendant Pollock said, "Resign or you're fired … you have five minutes to make a decision."  When Plaintiff protested and said "this isn't right," Defendant Pollock said, "These are the decisions you have to make when you're an adult."

121.    Defendant Acosta, the Warden, was apprised of the situation, looked over Plaintiff's pregnancy accommodations, and said, "You've been missing too many days."

122.    Defendant Gholston said, "If I was you, I would just resign—but don't put because of pregnancy complications."

123.    Defendants Gholston, Acosta, and Pollock deprived Plaintiff of her Fourteenth Amendment due process rights because Defendants did not provide adequate process.

124.    As a result of Defendants' deprivation of Plaintiff's property interest, Plaintiff has suffered damages.

## COUNT III
### 42 U.S.C. § 1983
### Fourteenth Amendment Substantive Due Process
### (Against Defendants Pollock, Gholston, and Acosta)

125.    Plaintiff reincorporates the allegations contained in paragraphs 56-84.

126.    Section 1 of the Fourteenth Amendment prohibits states from depriving persons of life, liberty or property without due process of law.

127.    Substantive due process prohibits government conduct that deprives a person of property regardless of procedures used.

128.    Plaintiff was employed by the Florida Department of Corrections, an agency of the state of Florida, and the South Florida Reception Center, an entity of the State of Florida.

129.    Plaintiff has a recognizable and protectable property interest in her public employment as an unappointed, non-certified correctional officer.  Plaintiff had a legitimate expectation of continued employment as a correctional officer.

130.    Defendants Pollock, Gholston, and Acosta, acting under color of law, deprived Plaintiff of a recognizable and protectable property interest by intentionally forcing Plaintiff to resign because of her pregnancy.

131.     Defendants abused their governmental power by acting intentionally and/or with deliberate indifference to Plaintiff's property interest in her public employment as a correctional officer.

132.     To be sure, this was not a random and unauthorized act.  Indeed, Warden Acosta was present and understood that Defendant Pollock and Ms. Gholston were intentionally depriving Plaintiff of her property interest in her public employment.

133.     Defendants Acosta, Pollock, and Gholston deprived Plaintiff of her property in a manner so arbitrary that it shocks the conscience.

134.     Indeed, forcing a 20-year-old pregnant woman experiencing complications to resign because she was "missing too many days"—because she was either in the hospital or on mandatory bedrest—transgresses the bounds of what a decent society values from public institutions.

135.     This point is buttressed by the fact that Defendant Gholston refused to accommodate Plaintiff and forced her to work for hours beyond her accommodated schedule.  As a result, Plaintiff's urgent care medical providers ordered 4 days of mandatory bed rest.

136.     Hence, Defendants Pollock, Gholston, and Acosta deprived Plaintiff of her property interest in reckless disregard or with deliberate indifference to Plaintiff's Fourteenth Amendment rights secured by the U.S. Constitution.

137.     As a result of Defendants Pollock, Gholston, and Acosta's intentional and or deliberately indifferent deprivation of Plaintiff's property interest, Plaintiff has suffered damages.

**COUNT IV**
**Art. I, § 9, Fla. Const.**
**Procedural Due Process**
**(Against Defendants Gholston, Acosta, and Pollock)**

138.     Plaintiff reincorporates the allegations contained in paragraphs 56-84.

139.    The Constitution of Florida states that "No person shall be deprived of life, liberty, or property without due process of law."

140.    The Supreme Court of Florida has interpreted Florida's due process clause similarly to the Fourteenth Amendment Due Process Clause.

141.    "Procedural due process" ensures that the state provides fundamentally fair process in connection with any deprivation of property.

142.    All persons are guaranteed sufficient process before losing a protected interest. Sufficient process arises when a party (1) receives notice of the possible loss of property and (2) a meaningful opportunity to be heard by a neutral decisionmaker in a meaningful manner.

143.    Plaintiff has a personal, recognizable, and protectable property interest as as a correctional officer.

144.    Courts apply a default rule that a person is entitled to process prior to any deprivation of property.  Still, courts may provide process after the deprivation if such process was all the state could provide.

145.    However, Plaintiff did not receive sufficient process *at any point* with respect to the deprivation of her interest in public employment as a correctional officer.

146.    Indeed, Plaintiff received no notice of the possible loss of her job, and did not have a meaningful opportunity to be heard by a neutral decisionmaker.

147.    Instead, Plaintiff arrived at work on December 6, 2018 expecting to return after being on mandatory bedrest.  However, she was blindsided by the fact that she would have to resign because of her pregnancy—without process.

148.    Defendant Pollock said, "Resign or you're fired … you have five minutes to make a decision."  When Plaintiff protested and said "this isn't right," Defendant Pollock said, "These are the decisions you have to make when you're an adult."

149.    Defendant Acosta, the Warden, was apprised of the situation, looked over Plaintiff's pregnancy accommodations, and said, "You've been missing too many days."

150.    Defendant Gholston said, "If I was you, I would just resign—but don't put because of pregnancy complications."

151.    Defendants Gholston, Acosta, and Pollock deprived Plaintiff of her Fourteenth Amendment due process rights because Defendants did not provide adequate process.

152.    As a result of Defendants' deprivation of Plaintiff's property interest, Plaintiff has suffered damages.

**COUNT V**
**FCRA, § 760.10(1)(a)**
**Hostile Work Environment**
**(Against Defendant SFRC and Defendant FDC)**

153.    Plaintiff reincorporates the allegations contained in paragraphs 27-84.

154.    The FCRA prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her sex.

155.    Hostile work environment harassment occurs when an employer's conduct has the purpose or effect of unreasonably interfering with an individual's work performance, or creating an intimidating, hostile or offensive environment.

156.    Defendant Detention Center and Defendant FDC, by and through its agent Ms. Palacios, altered the terms and conditions of Plaintiff's employment by incessantly referring to her as the "pregnant one," in front of Plaintiff's fellow trainees and in front of the Detention Center's

majors.  When Plaintiff said, "My name is Officer Smith," Ms. Palacios said, "I don't know what her name is—all I know is, she's the pregnant one."

157.    Defendant Detention Center and Defendant FDC, by and through its agent Ms. Gholston, altered the terms and conditions of Plaintiff's employment by disregarding Plaintiff's pregnancy accommodations, by refusing Plaintiff to allow her to take her pregnancy medication, by assigning Plaintiff to the most dangerous ward of the prison, and by forcing her to work for 5 hours longer than her doctor provided accommodations for.

158.    Defendant SFRC and Defendant FDC, by and through its agents, Mr. Pollock, Ms. Gholston, and Mr. Acosta induced Plaintiff to resign because of her pregnancy.

159.    As a result of Defendant SFRC and Defendant FDC's unlawful employment practices in violation of the FCRA § 760.10(1)(a), Plaintiff has suffered damages.

**COUNT VI**
**FCRA, § 760.10(1)(a)**
**Retaliatory Hostile Work Environment**
**(Against Defendant SFRC and Defendant FDC)**

160.    Plaintiff reincorporates the allegations in paragraphs 35-89.

161.    To establish a retaliatory hostile work environment claim, a plaintiff must show she (1) engaged in protected activity, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her engaging in protected activity, and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment.

162.    Plaintiff engaged in protected activity by requesting accommodations from Ms. Palacios concerning her various medications, and for Ms. Gholston to leave work no later than 2 P.M. because her medication made her drowsy.

163.    Ms. Palacios, acting as an agent for Defendant SFRC and Defendant FDC, subjected Plaintiff to unwelcome harassment by insisting on referring to Plaintiff as "the pregnant

one" in front of her fellow trainees.  When Plaintiff said, "My name is Officer Smith," Ms. Palacios said, "I don't know what your name is, all I know is you're the pregnant one."  Subsequently, the room of trainee officers burst out laughing, and Plaintiff was left feeling the lowest she had ever felt.

164.    Ms. Gholston, acting as an agent for Defendant SFRC and Defendant FDC, deliberately disregarded Plaintiff's pregnancy accommodations, forced her to work hours longer than accommodated by her doctor, refused to allow her to take her pregnancy medication, and told her not to return until her doctor lifted her accommodation restrictions.  After forcing Plaintiff to work for more than 5 hours after her accommodated time, Plaintiff had to rush to an urgent care for medical attention, where medical providers placed Plaintiff on mandatory bedrest.

165.    The harassment was based on Plaintiff notifying Ms. Palacios of her pregnancy, and telling Ms. Gholston of her need for accommodations.

166.    The aforementioned allegations, taken together, are sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

167.    As a result of Plaintiff's exposure to a retaliatory hostile work environment, in violation of FCRA § 760.10(1)(a), Plaintiff has suffered damages.

### COUNT VII
### FCRA, § 760.10(1)(a)
### Disparate Treatment
### (Against Defendant Detention Center and Defendant FDC)

168.    Plaintiff reincorporates the allegations contained in paragraphs 34-82.

169.    FCRA prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her sex.

170.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

171.    Defendant Detention Center and Defendant FDC, by and through its agents, Mr. Pollock, Ms. Palacios, Ms. Weatherspoon, Ms. Gholston, and Mr. Acosta treated Plaintiff differently because of her sex.

172.    Ms. Palacios insisted on referring to Plaintiff as "the pregnant one." Ms. Gholston assigned Plaintiff to the most dangerous ward of the Detention Center because of her pregnancy. Ms. Palacios did not refer to any of her other trainee officers as "the pregnant one."

173.    Mr. Pollock, Ms. Gholston, and Mr. Acosta told Plaintiff she could either resign or be fired because of her pregnancy. Indeed, Plaintiff was induced to resign not because of her work performance, but because of complications arising from her pregnancy. This is necessarily gender discrimination because non-pregnant employees were not induced to resigned because of a pregnancy.

174.    Ms. Weatherspoon humiliated Plaintiff because of her pregnancy. Ms. Weatherspoon read Plaintiff's letter to the academy, stating, "Look she even spelled pregnancy wrong!" This is necessarily gender discrimination, because Ms. Weatherspoon did not humiliate other correctional officers who were not pregnant.

175.    As a result of Defendant SFRC and Defendant FDC's employment practices in violation of FCRA § 760.10(1)(a), Plaintiff has suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants, respectively as enumerated below, the following relief:

A.    An order directing Defendant SFRC and Defendant FDC to place Plaintiff in the position she would have had but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of Plaintiff.

B.      An award of damages against Defendant SFRC and Defendant FDC, in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

C.      An award of damages against Defendant SFRC and Defendant FDC, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence, personal dignity, the opportunity to pursue an equal employment opportunity, and emotional pain and suffering and other physical or mental injuries;

D.      An award of damages against Defendant SFRC and Defendant FDC, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

E.      An award of damages against Defendant SFRC and Defendant FDC for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F.      An award of liquidated damages against Defendant SFRC and Defendant FDC.

G.      An award of punitive damages against Defendants Acosta, Palacios, Pollock, and Gholston, for intentionally depriving Plaintiff of her Constitutional and Civil Rights motivated by evil intent, or reckless or callous indifference to Plaintiff's federally protected rights.

H.      Against all Defendants, pursuant to 42 U.S.C. § 1988(b), an award of costs that Plaintiff has incurred in this Action, as well as Plaintiff's reasonable attorneys' fees plus costs and interest to the fullest extent permitted by law; and

I.      Such other and further relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial of all issues so triable under 42 U.S.C. § 1983 as an "action at law" within the meaning of the Seventh Amendment's right to jury trial, and pursuant to Plaintiff's express right to a jury trial conferred by FCRA § 760.11(5).

Dated: May 7, 2021

Respectfully Submitted,

By: /s/ Caroline H. Miller
Caroline H. Miller, Esq.
FL Bar No. 1012331
**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Jahnika Smith*
701 Brickell Ave., Suite 1310
Miami, Florida 33131
(305) 946-1884
Primary: caroline@dereksmithlaw.com
Secondary: brett@dereksmithlaw.com